## Case No. 11,449.

### The PROVIDENCE.

[9 Ben. 188.] [1]

District Court, E. D. New York. July, 1877.

COLLISION IN HELL GATE—FOLLOWING VESSEL.

A steamboat, the P., following another steamboat on a flood tide, overtook her near the upper end of Blackwell's Island. Several tows were met, the P. crossed to the south channel as the other steamboat was passing down the channel towards the end of the island, and in crossing her bows came in collision: *Held* that the P. was in fault. being the following vessel, for not stopping when she could easily do so, to allow the other vessel to get ahead enough for the P. to pass under her stern in safety.

In admiralty.

BENEDICT, District Judge. This action is to recover for damages sustained by the steamboat Bolivar in a collision with the steamer Providence on the 17th day of September, 1875, near the upper end of Blackwell's Island. At the time of the collision the tide was flood and the weather clear; both vessels were bound to New York, the Providence being much the larger and faster of the two boats. The Bolivar entered the Gate first, and as she turned Hallett's Point the Providence passed across her stern, taking the main ship channel around Great Mill Rock while the Bolivar kept down between the Long Island shore and Flood Rock. When the Providence opened out above Mill Rock, she met a tow then off Little Mill Rock, which she passed to port, at the same time slowing down. After passing this tow the Providence was opened again, and then met another tow coming up about abreast of Horn's Hook. This tow gave two signals, and accordingly the Providence kept to port, and then instead of taking the north channel by Blackwell's Island kept on for the south channel. At this time the Bolivar was proceeding down below Flood Rock, so that the

---

[2] White v. Judd. 1 Metc. [Mass.] 293. affirms the same rule as to the travel and attendance of parties in suits.

[1] [Reported by Robert D. Benedict, Esq.. and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

Providence in crossing to the south channel was brought between the Bolivar and the end of Blackwell's Island. The space proved too narrow and the two vessels came in contact, the Providence knocking off the Bolivar's stem with her port bow as she swept past. At the time of the blow the Bolivar was nearly still, having reversed her engine. The Providence was under full speed.

On the part of the Providence it is claimed that no fault on her part is shown, inasmuch as the second tow met by her compelled her to take the south channel, and in reaching that channel she went as near as possible to the island, and that she could not check her speed in this locality without going ashore; wherefore it is contended that the accident was either inevitable or attributable to fault of the Bolivar in not keeping out of the way of the Providence by sheering off towards the Long Island shore.

It is to be remarked, however, that the answer does not claim the accident to have been inevitable, but states that there was room for the Providence to pass between the Bolivar and the island, as the vessels were heading, when the Providence determined to take the south channel; and charges that the Bolivar put out from the shore as she approached Blackwell's Island, and crossed the channel over towards the northern end of Blackwell's Island directly across the course of the Providence, so as to cut her off. The fault thus charged upon the Bolivar is not sustained by proof; on the contrary, it is clearly proved that she held her course till the Providence was close upon her, when she reversed and starboarded her helm, by which her bow was thrown a little to port before the blow.

As I view this case, the fault lies in the Providence for not stopping when she could with safety, and waiting until there was room for her to pass under the Bolivar's stern. When the Providence met the second tow, three courses were open to her: one to pass the tow to the north and take the north channel; one to pass the tow to the south and keep on through the south channel, trusting to her ability to pass the end of the island before the Bolivar should reach that point; and one to stop and wait until the Bolivar passed down, so that she could be passed under her stern. The Providence chose to keep on and take the chances of reaching the end of the island before the Bolivar. In this she failed, and she must bear the consequences. I do not say that she could have taken the north channel, nor am I certain that after she had determined to keep on for the south channel it was possible for her to go astern of the Bolivar without waiting, although there is foundation in the evidence to argue that she could have done so. But it is manifest that she could have held back as she passed the second tow instead of keeping on as she did, and thus placing herself where she could not stop, and, as it turned out, could not pass the Bolivar without hitting her. The Bolivar was the leading vessel, the Providence was endeavoring to pass, and she was bound to select a time and place where she could do so without touching the leading vessel. The law gave her no right to call upon the Bolivar to give away to enable her to pass ahead, when by holding back in time she could with safety have passed astern. The decree must, therefore, be for the libellant, with a reference to ascertain the damages.